RECEIVED

DEC 1 6 2009

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IRVING MCKENNIE, JR. | § § | |
| Plaintiff | § § | |
| v. | § § | CIVIL ACTION NO. |
| | § § | **A09CA 906LY** |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE | § § § | |
| Defendant | § § | |

## COMPLAINT

Plaintiff Irving McKennie, Jr. respectfully files this complaint and would show the Court:

### STATEMENT OF CLAIMS

1. Plaintiff Irving McKennie, Jr. brings this civil rights action for redress of violations of his rights under the Religious Land Use and Institutionalized Persons Act, the Equal Protection clause of the Fourteenth Amendment to the United States Constitution, and the Texas Religious Freedom Restoration Act, seeking injunctive and declaratory relief from Defendant Texas Department of Criminal Justice (TDCJ).

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), and § 2201 (Declaratory Judgment Act). This Court has supplemental jurisdiction to consider Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (3), as Defendant TDCJ resides or can be found within this district and division.

### PARTIES

4. Plaintiff Irving McKennie is a Texas state inmate in the Beto Unit of the Texas Department of Criminal Justice (TDCJ), in Tennessee Colony, Anderson County, Texas.

5. TDCJ is the state prison system, an agency of the State of Texas. It can be served with process by serving Brad Livingston, Executive Director for TDCJ, at 209 W. 14th Street, Austin, TX 78701. *Service is requested.*

## STATEMENT OF FACTS

6. Plaintiff Irving McKennie has been a member of the Messianic Israelite faith for the past ten years, and is a sincere adherent of that faith. Messianic Israelites follow many of the religious practices of the Jewish faith, but believe that Jesus is the messiah.

*Defendant Denies Mr. McKennie's Requests for a Kosher and/or Vegan Diet*

7. As part of the practice of his faith, Mr. McKennie is required to keep a kosher diet.

8. In accordance with established Jewish tradition and practice, Mr. McKennie believes that keeping a kosher diet is a fundamental tenet of the Israelite faith and that the primary purpose of observing and keeping a kosher diet is to conform to the divine will of God as expressed in the Torah.

9. Keeping kosher requires strict adherence to the rules set forth in the Torah (commonly referred to as the laws of *kashruth*) regarding the foods that may be consumed. Foods that may be eaten include all non-animal products, meat from animals that chew cud and have cloven hooves (e.g., cows and sheep), certain types of poultry (e.g., chicken, turkey, and duck), and fish that have fins and scales. Dairy products may be eaten, but meat and dairy may not be mixed together.

10. Keeping kosher also dictates specific methods by which allowable foods may be prepared for consumption. For example, food is not considered kosher when prepared in containers that are non-kosher. Containers, pots and pans, utensils, and all other implements used in food preparation must not come into contact with non-kosher food. The food must also be served on plates and bowls and eaten with utensils that have not had contact with non-kosher

2

food.

11. There are three essential qualities of a kosher diet: (1) it must be derived from a religiously acceptable source; (2) it must be prepared and served in a religiously acceptable way; and, (3) meat and dairy may not be mixed.

12. A kosher diet can easily be made available in institutional environments through several possible means, including, but not limited to: (1) preparing food on site with proper kitchen facilities under the direction of a qualified kosher food supervisor; (2) obtaining pre-packaged meals from kosher food vendors; or (3) obtaining acceptable kosher products through retail outlets and kosher food purveyors. Additionally, the use of disposable plastic or paper goods is an easy, cost effective, and religiously acceptable means of providing kosher food in an institutional environment.

13. Defendant, including at the Beto Unit, limits inmates to only three types of meal plans, none of which is kosher under the laws of *kashruth*. There is no such thing as "close to" kosher. If a meal falls short of kosher, it does not meet the requirements of Mr. McKennie's faith.

14. The majority of states and the Federal Bureau of Prisons provide a kosher diet, but TDCJ, including at the Beto Unit, refuses to similarly accommodate the religious needs of Messianic Israelite prisoners in its facilities by providing a kosher diet.

15. Mr. McKennie filed a formal grievance with TDCJ on or about June 10, 2008. In this grievance, Mr. McKennie requested strict kosher meals according to the dietary standards of his faith.

16. On June 23, 2008, Defendant denied Mr. McKennie's request, and thereby substantially burdened his free exercise of religion.

17. On June 25, 2008, Mr. McKennie filed a second level grievance again requesting a

strict vegan kosher diet tray as required by his faith.

18. On July 16, 2008, Defendant denied Mr. McKennie's second level grievance. Its denial provided no statement of Defendant's rationale for the decision to impose a burden on Mr. McKennie's religious exercise by refusing to provide him with a kosher diet.

19. Despite the fact that Mr. McKennie has exhausted all administrative remedies, Defendant continues to this day to deny Mr. McKennie the kosher diet required by the law and his religious beliefs.

20. Defendant has never demonstrated the existence of any compelling government interest for its decision to substantially burden Mr. McKennie's religious exercise by denying him a kosher diet, or demonstrated how the failure to provide a kosher diet is the least restrictive means of advancing any such alleged compelling governmental interest.

*Defendant Denies Mr. McKennie the Right to Congregate for Worship without a Volunteer*

21. As part of the practice of the Messianic Israelite faith, Mr. McKennie observes the Sabbath (Saturday) and traditional Jewish holy days, including but not limited to: Hanukah, Pesach, Sahvout, Rosh Hashanah, Yom Kippur, Sukkot, and Shemini Atzeret.

22. Members of the Messianic Israelite faith congregate for worship on the Sabbath and on holy days as part of their faith.

23. TDCJ does not allow members of the Messianic Israelite faith, including Mr. McKennie, to congregate for worship without a qualified outside volunteer, someone from the community who volunteers to lead religious services in the prison, unless there are fewer than four Israelites in attendance. However, TDCJ does not require Muslim inmates to have a qualified outside volunteer in order to meet for worship, even if more than four Muslims are attending the service.

24. The Israelites' outside visitor to supervise the fellowship has been approved by

4

TDCJ, but he can only come on Tuesdays between 3 and 5 p.m., not on the Sabbath or on holy days that do not fall on a Tuesday.

25. On November 6, 2006, Mr. McKennie filed a formal grievance with TDCJ requesting that the Messianic inmates be allowed to congregate for worship without a volunteer, in the same manner as the Muslim inmates.

26. On November 9, 2006, Defendant denied Mr. McKennie's request. Defendant responded to Mr. McKennie's request by stating that policy requires an approved volunteer to be present for services, that this is by court order, and the only exception to this is the Islamic community.

27. On November 13, 2006, Mr. McKennie filed a second level grievance again requesting that the Messianic inmates be allowed to congregate for worship without a volunteer, thereby substantially burdening his free exercise of religion.

28. On December 6, 2006, Defendant denied Mr. McKennie's second level grievance. Their denial provided no statement of Defendant's rationale for the decision to impose a burden on Mr. McKennie's religious exercise by refusing to allow Messianic inmates to congregate for worship without a volunteer.

29. Despite the fact that Mr. McKennie has exhausted all administrative remedies, Defendant continues to this day to deny Mr. McKennie the ability to congregate for worship without a volunteer, and thereby denies Mr. McKennie the ability to congregate for worship on the Sabbath and on holy days as required by his sincere religious beliefs.

30. Defendant has never demonstrated the existence of any compelling government interest for its decision to substantially burden Mr. McKennie's religious exercise by denying him the ability to congregate for worship without a volunteer, or demonstrated how this denial is the least restrictive means of advancing any such alleged compelling governmental interest.

*Defendant has Denied Mr. McKennie the Right to Possess and/or Wear a Talith*

31. As part of the practice of his faith, Mr. McKennie would like to be able to possess and/or wear the talith, a prayer shawl.

32. The TDCJ Chaplaincy Manual lists the talith among the approved religious devotional items and permits the wearing of the talith in the cell/dorm and to worship.

33. The Israelites' outside visitor brought the inmates donated taliths for their use in worship.

34. According to the TDCJ Chaplaincy Manual, if an inmate wants to obtain a talith, he needs to fill out an I-60 request to the unit chaplain.

35. Mr. McKennie filled out three I-60 forms requesting the talith, and never received a response.

36. On December 17, 2008, Mr. McKennie filed a formal grievance with TDCJ requesting that the Messianic inmates be allowed to possess and wear the taliths.

37. On January 8, 2009, Defendant denied Mr. McKennie's request.

38. On January 9, 2009, Mr. McKennie filed a second level grievance again requesting that the Messianic inmates be allowed to possess and wear the taliths.

39. On February 4, 2009, Defendant denied Mr. McKennie's second level grievance. Their denial provided no statement of Defendant's rationale for the decision to impose a burden on Mr. McKennie's religious exercise by refusing to allow Messianic inmates to possess and wear the taliths.

40. Despite the fact that Mr. McKennie has exhausted all administrative remedies, Defendant continues to this day to deny Mr. McKennie the ability to possess and wear the talith as required by his sincere religious beliefs.

41. Defendant has never demonstrated the existence of a compelling government interest

for its decision to substantially burden Mr. McKennie's religious exercise by denying him the right to possess and wear the talith, or demonstrated how denying inmates the right to possess and wear the talith as required by their religious beliefs is the least restrictive means of advancing any such alleged compelling government interest.

## CAUSE OF ACTION I—RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT

42. Mr. McKennie incorporates the foregoing allegations as if set forth below, and further alleges:

43. Defendant has deprived and continue to deprive Mr. McKennie of his right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc, by unlawfully imposing a substantial burden on his religious exercise without any compelling government interest.

44. Defendant's refusal to allow kosher meals, refusal to allow Messianic inmates the right to congregate for worship without a volunteer, and refusal to allow Messianic inmates the right to possess Taliths (1) influences Mr. McKennie to act in ways that violate his religious beliefs, and (2) forces Mr. McKennie to choose between, on the one hand, enjoying a generally available and non-trivial benefit, and, on the other hand, following his religious beliefs. Mr. McKennie just wants fair and equal treatment; if it is not a burden for members of other faiths to eat a diet mandated by their faith, congregate for worship without a volunteer, grow a beard, and possess approved religious devotional items, it is not a burden for his faith to be allowed to do so.

45. The substantial burdens Defendant has imposed on Mr. McKennie's religious exercise are imposed in a program or activity that receives federal financial assistance.

## CAUSE OF ACTION II—TEXAS RELIGIOUS FREEDOM RESTORATION ACT

46. Mr. McKennie incorporates the foregoing allegations as if set forth below, and

7

further alleges:

47. Defendant has deprived Mr. McKennie of his right to the free exercise of religion as secured by the Texas Religious Freedom Restoration Act, Tex. Civ. Prac. & Rem. Code Ann. §110.001 *et seq.*, which prevents state and local government officials from substantially burdening the free exercise of religion without a compelling justification for doing so.

48. Defendant unlawfully imposes a substantial burden on Mr. McKennie's religious exercise without a compelling interest in the imposition, nor does this imposition represent the least restrictive means of furthering a compelling interest.

## CAUSE OF ACTION III—EQUAL PROTECTION

49. Mr. McKennie incorporates the foregoing allegations as if set forth below, and further alleges:

50. Defendant's refusal to approve Mr. McKennie's request to eat a diet consistent with his religious beliefs, congregate for worship without a volunteer, grow a beard, and possess and wear approved religious devotional items, while permitting prisoners holding other religious beliefs to do so favors some religions over others, and thereby violates the Equal Protection clause of the Fourteenth Amendment to the Constitution of the United States.

51. Defendant's actions favoring some religions over others burden a fundamental right—Mr. McKennie's free exercise of religion. This discriminatory practice targets members of the Messianic Israelite faith, and does not bear any rational relationship to any legitimate governmental interest, and further, is not narrowly tailored to further any compelling governmental interests. Moreover, this discriminatory practice does not serve any important governmental objectives, nor are the discriminatory means related to achievement of such objectives.

## DECLARATORY JUDGMENT

52. Mr. McKennie requests all appropriate declaratory relief that can be granted by this Court.

## INJUNCTIVE RELIEF

53. Mr. McKennie seeks injunctive relief, permanently enjoining Defendant from:

    a. restricting Mr. McKennie's religious practices;

    b. denying Mr. McKennie the right to congregate for worship with other Messianic Israelites on the Sabbath and holy days without an outside volunteer;

    c. denying Mr. McKennie the right to kosher and/or vegan meals; and,

    d. denying Mr. McKennie the right to possess and/or wear a talith.

## ATTORNEYS' FEES AND COSTS

54. Pursuant to 42 U.S.C. § 1988, Mr. McKennie is entitled to recover attorneys' fees and costs.

## PRAYER FOR RELIEF

Plaintiff Irving McKennie, Jr. therefore respectfully requests that the Court:

    A. Grant declaratory and injunctive relief as set out in this complaint;

    B. Grant reasonable attorneys' fees, litigation expenses and costs; and,

    C. Grant such other and further relief as appears reasonable and just, to which Plaintiff may be entitled.

Dated: December 16, 2009.

Respectfully Submitted,

_____
Scott Medlock
State Bar No. 24044783
Lauren Izzo
State Bar No. 24065482
*Application for admission pending*

James C. Harrington
State Bar No. 09048500


TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Drive
Austin, TX 78741
  (512) 474-5073 [phone]
  (512) 474-0726 [fax]

TEXAS CIVIL RIGHTS PROJECT
100 Law Center
c/o Texas Innocence Network
Houston, TX 77204-6060
   (713) 743-1011 [phone]

ATTORNEYS FOR PLAINTIFF